PISANO vs. THUNBERG, MISC 18-000448

































 
 CHARLES R. PISANO and GEORGE NADER, Plaintiffs, v. STEVEN THUNBERG, JOHANNES MEINTJES, KEVIN HARDY, and GAIL HANCOCK, as they are Trustees of Bradford Acres Condominium Trust of Provincetown, Defendants
 MISC 18-000448 
 JUNE 28, 2021
BARNSTABLE, ss.
FOSTER, J.
MEMORANDUM AND ORDER ALLOWING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT














 INTRODUCTION 





 Charles R. Pisano and George Nader (Pisano and Nader, together, Plaintiffs) own a condominium unit at the Bradford Acres Condominium (Condominium) in Provincetown, Massachusetts. They have brought this case claiming that they have adversely possessed a portion of the Condominium's common area and are therefore entitled to a judgment that this adversely possessed portion of the common area is now part of their condominium unit. The defendant trustees of the Condominium's trust have brought counterclaims. The parties have brought cross-motions, seeking dismissal of each other's claims. After hearing, the court finds that condominium unit owners cannot add common area to their units by adverse possession; such a claim is barred by the provisions of G.L. c. 183A, § 5, that require the consent of all unit owners to change percentage interests in common areas. Therefore, Plaintiffs' remaining claim must be dismissed. As for Plaintiffs' cross-motion for summary judgment, they have failed to submit any evidence to the court that would warrant dismissal of the counterclaim; their motion must therefore be denied. 





PROCEDURAL HISTORY 





 Plaintiffs filed their Verified Complaint (Complaint) in this action on August 30, 2018, naming as defendants Steven Thunberg, Johannes Meintjes, Kevin Hardy, and Gail Hancock (Trustees), as the Trustees of Bradford Acres Condominium Trust of Provincetown (Trust). The Complaint contains four counts: (I) adverse possession, (II) violation of G.L. c. 183A, § 5(e), (III) violation of G.L. c. 183A, § 10(c), and (IV) accounting. Defendants' Motion to Dismiss Plaintiff's Counts I-IV of Plaintiffs' Verified Complaint (Motion to Dismiss) was filed September 25, 2018; Plaintiffs' Opposition to Defendants' Motion to Dismiss was filed October 12, 2018. At the case management conference on October 15, 2018, the Motion to Dismiss count I of the Complaint was denied, and the parties were given leave to file additional briefs on the court's subject matter jurisdiction. Each set of parties filed their respective memoranda of law on October 29, 2018. At a status conference on November 19, 2018, the Motion to Dismiss counts II, III, and IV of the Complaint was allowed, with a memorandum to follow. Said memorandum was issued on December 6, 2018.





 The Defendants' Answer and Counterclaims was filed on December 12, 2018. The Plaintiffs' Motion to Dismiss Defendants' Counterclaim (Motion to Dismiss Counterclaim) was filed on December 24, 2018, and the Trust filed its Opposition and Cross Motion for Transfer of Claims to the Barnstable Superior Court (Motion for Transfer) on January 23, 2019. At a hearing held on February 1, 2019, the Motion to Dismiss Counterclaim was allowed as to Counts II, III, and IV, and denied as to Count I. The Defendants' Amended Answer, Affirmative Defenses, and Counterclaims (Amended Answer) was filed on February 14, 2019. The Amended Answer contains two counterclaims: (I) trespass by way of an overburdening of the limited easement, and (II) waste and unlawful encroachment (Counterclaim). Plaintiffs thereafter filed a Partial Motion to Dismiss Defendants' Amended Counterclaim on February 22, 2019 (Partial Motion to Dismiss), and the defendants' opposition was filed on June 5, 2019. At a hearing held on June 14, 2019, the Partial Motion to Dismiss was denied. The Plaintiffs' Answer and Affirmative Defenses to Defendants' First Amended Counterclaim (Plaintiffs' Answer) was filed on July 22, 2019. 





 A trial was scheduled for January of 2020. However, on November 25, 2019, Pisano and Nader filed their Motion to Continue Trial Date by Six Months. The Trust's opposition and Cross Motion for Enforcement of Settlement Agreement (Motion for Enforcement) was filed on December 9, 2019, and on December 16, 2019, Pisano and Nader filed an opposition to the Motion for Enforcement. At a hearing on December 19, 2019, the Plaintiffs' Motion to Continue Trial Date was allowed. On January 24, 2020, the court issued its Memorandum and Order Denying Plaintiffs'/Defendants in Counterclaim's Cross Motion for Enforcement of Settlement Agreement. 





 On June 1, 2020, Defendants' Motion for Judgment on Pleadings and for Partial Summary Judgment on Singular Fact that Plaintiffs are Unit Owners at Defendants' Bradford Acres Condominium (Defendants' Motion) was filed. Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Plaintiffs' Opposition) was filed on June 16, 2020, and their Cross-Motion for Summary Judgment (Plaintiffs' Cross-Motion) was filed on June 18. The court heard both motions on August 5, 2020, and took them under advisement. This memorandum and order follows. 





LEGAL STANDARD 





 A defendant's motion for judgment on the pleadings under Mass. R. Civ. P. 12(c) is actually a motion to dismiss for failure to state a claim upon which relief can be granted, and is analyzed under the standard for motions to dismiss. Jarosz v. Palmer, 436 Mass. 526 , 529-530 (2002). The court accepts as true well-pleaded factual allegations and reasonable inferences drawn therefrom, Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43 , 45 (2004), but does not accept "legal conclusions cast in the form of factual allegations." Iannacchino v. Ford Motor Co., 451 Mass. 623 , 633 (2008), quoting Schaer v. Brandeis Univ., 432 Mass. 474 , 477 (2000); see Jarosz, 436 Mass. at 529-530. Generally, if matters outside the pleadings are presented to and not excluded by the court, the motion will be treated as a motion for summary judgment. Mass. R. Civ. P. 12(b), 12(c). The court may, however, take into account matters of public record and documents integral to, referred to, or explicitly relied on in the complaint, whether or not attached, without converting the motion to a motion for summary judgment. Marram, 442 Mass. at 45 n. 4; Schaer, 432 Mass. at 477; Reliance Ins. Co. v. Boston, 71 Mass. App. Ct. 550 , 555 (2008); Shuel v. DeIeso, 16 LCR 329 , 329 n.2 (2008) (Misc. Case No. 355798) (Long, J.). Therefore, the court will accept as true the factual (but not legal) allegations of the Complaint for the purposes of the Defendants' Motion, and will consider the exhibits attached to the Complaint and the various recorded instruments referenced in the Complaint. [Note 1] 





 Summary judgment, in contrast, may be entered if the "pleadings, depositions, answers to interrogatories, and responses to requests for admission . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mass. R. Civ. P. 56(c). In viewing the factual record presented as part of the motion, the court is to draw "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Town of Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). Where the non-moving party bears the burden of proof, the "burden on the moving party may be discharged by showing that there is an absence of evidence to support the non-moving party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 711 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Regis College, 462 Mass. at 291- 292. 





FACTS 





 In Plaintiffs' one remaining count, they seek to establish ownership over a common area of the Condominium by adverse possession and in fee. The following facts are undisputed: 





 1. The Condominium, which is located at 4 Bradford Acres Road, Provincetown, Massachusetts, was established by Master Deed dated August 23, 1977, and recorded in the Barnstable Registry of Deeds (registry) at Book 2570, Page 117 on August 25, 1977. The Trust was established by Declaration of Trust also dated August 23, 1977, and recorded with the registry at Book 2570, Page 130 on August 25, 1977. Complaint at ¶¶ 5-6. 





 2. Pisano and Nader are owners of Unit C in the Condominium. They purchased Unit C on September 20, 2002, by deed recorded in the registry at Book 15627, Page 153. Complaint at ¶¶ 1, 19; Plaintiffs' Opposition at 1. 





 3. The Defendants, Steven Thunberg, Johannes Meintjes, Kevin Hardy, and Gail Hancock, are Trustees of the Trust. They have addresses of 4 Bradford Acres Road, Units A, F, B, and D (respectively), Provincetown, Massachusetts. Complaint at ¶¶ 2-3. 





 4. The Condominium has a total of seven units lettered "A" through "G." The Master Deed provides that each unit shall have "exclusive use" of their respective abutting porches, but that the yards extending beyond the porches are common areas. The porches (approximately 4 feet by 4 feet) and the yards (approximately 16 feet by 16 feet) are shown on a plan by Burnett V. Vickers, registered architect, recorded at the registry in Plan Book 315, Page 92, "Floor Plan and Foundation Plan." Complaint at ¶¶ 7-13.





 5. The owners of Units B, D, and G have extended their use beyond their porches. It is contested whether such use is with permission. Only the owners of Units E and F have retained their respective original porches. Complaint at ¶¶ 15-18; Amended Answer at 2. 





 6. Since their purchase, Pisano and Nader have landscaped the deck of Unit C with flower gardens and planters and have kept personal property on the deck including a storage cabinet, buoys, netting, flags, lounge chairs, tables, and umbrellas. Complaint at ¶¶ 24-25. 





 7. Plaintiffs' use of the deck has been with the knowledge of the other unit owners. Complaint at ¶ 28. 





 In addition to the above undisputed facts, for the purposes of the Defendants' Motion, the following facts are accepted as true: 





 1. When Pisano and Nader purchased Unit C in 2002, the prior owners informed them that the now-converted deck of Unit C extended into the common area (Disputed Area) and had done so for at least ten years. From the time of their purchase, Pisano and Nader have "continuously used, maintained, improved, and landscaped the deck, visible to the other Unit Owners." Complaint at ¶¶ 19-22, 29. 





 2. Plaintiffs' use of the deck has been exclusive, and it has not been used by any of the other unit owners. Complaint at ¶¶ 26-27. 





 In addition to the above undisputed facts, for the purposes of the Plaintiffs' Cross Motion, the following facts are accepted as true: 





 1. Pisano and Nader have extended their use and enjoyment of common areas in ways that are unpermitted and forbidden by the Condominium Master Deed and Trust, including an unauthorized removal of recent planting made by Trustees, extending their use of common area storage beyond the parameters of their permitted use. Amended Answer at ¶ 9. 





 2. Without authority, Pisano and Nader have maintained a shower and a refrigerator like apparatus on the perimeter of a 16 foot by 16 foot area of the property which exceeds the extent of use that the Plaintiffs are afforded to the common area. Amended Answer at ¶11. 





DISCUSSION 





I- Defendants' Motion 





 Pisano and Nader claim that they have established ownership of the Disputed Area by adverse possession. In the Defendants' Motion, the Trust argues that regardless of whether or not Pisano and Nader can support a claim of adverse possession factually, "the ownership in a condominium community defeats the Unit Owners' adverse possession claim," Defendants' Motion at 2, because common areas must, as a matter of law, remain undivided under G.L. c. 183A, § 5. Defendants' Motion at 2-3. In response, Pisano and Nader point out that unlike some other statutes, G.L. c. 183A, the condominium statute, does not explicitly bar claims for adverse possession, and, therefore, "[u]nless and until the Legislature enacts a statute barring adverse possession to common areas, Plaintiffs are authorized to acquire title to common areas by adverse possession." Plaintiffs' Opposition at 1. 





 The question, therefore, is whether condominium unit owners may obtain title by adverse possession over common areas of a condominium, adding that area to their unit, or whether such a claim is barred by c. 183A. While the condominium statute does not explicitly bar adverse possession claims over common areas by unit owners, that does not end the inquiry. The court must look at the language of the statute to determine if the Legislature intended that unit owners be barred from obtaining title to common areas by adverse possession. "Our primary goal in interpreting a statute is to effectuate the intent of the Legislature, and 'the statutory language is the principal source of insight into legislative purpose.'" AIDS Support Group of Cape Cod, Inc. v. Barnstable, 477 Mass. 296 , 300 (2017), quoting Bronstein v. Prudential Ins. Co., 390 Mass. 701 , 704 (1984); see Curtatone v. Barstool Sports, Inc., 487 Mass. 655 , 658 (2021). 





 "The condominium is a form of property ownership in which the unit owner retains an exclusive fee interest in his individual unit in addition to an undivided interest with all other unit owners in the condominium's common areas and facilities." Golub v. Milpo, Inc., 402 Mass. 397 , 400 (1988). Condominiums are authorized and governed under G.L. c. 183A. The statutory provisions relevant to this issue are found in G.L. c. 183A, § 5, concerning condominium common areas. Section 5(a) provides: 





 Each unit owner shall be entitled to an undivided interest in the common areas and facilities in the percentage set forth in the master deed. Such percentage shall be in the approximate relation that the fair value of the unit on the date of the master deed bears to the then aggregate fair value of all the units and may include determinations of whether and how to weigh a restriction relating to value imposed on 1 or more, but fewer than all, units by covenant, agreement or otherwise. 





 G.L. c. 183A, § 5(a). Section 5(b)(1) provides, in relevant part: 





 The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners whose percentage of the undivided interest is materially affected, expressed in an amendment to the master deed duly recorded. . . . The percentage of the undivided interest in the common areas and facilities shall not be separated from the unit to which it appertains, and shall be deemed to be conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument. The granting of an easement by the organization of unit owners, or the designation or allocation by the organization of unit owners of limited common areas and facilities, or the withdrawal of a portion of the common areas and facilities, all as provided for in this subsection, shall not be deemed to affect or alter the undivided interest of any unit owner. [Note 2] 





 G.L. c. 183A, § 5(b)(1) (emphasis added). Section 5(c) provides, in relevant part: 





 The common areas and facilities shall remain undivided and no unit owner or any other person shall bring an action for partition or division of any part thereof, except as provided in section 17, 18 or 19. . . . Except as expressly provided, this section shall not be varied by agreement and rights conferred thereby shall not be waived. If there is a conflict between this section and the master deed, declaration of trust or bylaws of any condominium submitted under this chapter, the language of this sections shall control. Any covenant or provision to the contrary shall be null and void. [Note 3] 





 G.L. c. 183A, § 5(c). 





 Reading these provisions together, their intent is to provide a scheme of common ownership of common areas that is antithetical to adverse possession by one of the unit owners. Chapter 183A provides for a specific form of ownership of real property, the condominium, that combines title in a specific unit and an undivided interest, with other unit owners, in specified common areas. G.L. c. 183A, §§ 3-5. General Laws c. 183A, § 5, sets out a "comprehensive scheme defining and governing the common areas of a condominium complex." Beaconsfield Towne House Condominium Trust v. Zussman. 401 Mass. 480 , 483 (1988). Section 5 is unambiguous: it mandates that each unit owner is entitled to a proportional, undivided interest in common areas in roughly the same percentage as their unit interest in the condominium, G.L. c. 183A, § 5(a), that the common areas must remain undivided and cannot be partitioned, id. at § 5(c), and that the unit owners' percentage interests in the common areas can only be modified by the consent of all the unit owners. Id. at § 5(b)(1); Beaconsfield Towne House Condominium Trust, 401 Mass at 483, 484 n.11. 





 The SJC has particularly emphasized § 5's requirement that percentage interests in common areas cannot be changed absent unanimous consent. In Strauss v. Oyster River Condominium Trust, 417 Mass. 442 (1994), condominium unit owners first challenged a condominium's master deed, which had allowed additional units to encroach into the common area. Id. at 443-444. The SJC affirmed the Land Court, agreeing the master deed was unlawful and the equitable relief granted was appropriate. Id. at 445. Noting the controlling statute was G.L. c. 183A, § 5(b), the SJC held that the Land Court had "ruled correctly that the expansions into the common area altered the percentage of the undivided interest which each owner had in the common area and that the expansions were unlawful because they were not approved unanimously by the owners." Id. The defendants in Strauss argued to the SJC that the developer had retained the right to grant easements to unit owners to expand their units into the common area and that that interest was transferred to the trustees, something not contemplated by the statute. But the SJC concluded "[t]hat is not . . . what the master deed does. There is no reservation of a retained interest," and a construction otherwise would undercut the unanimous consent required by statute to amend the ownership percentages in the common areas. Id. at 446. To construe the master deed to "overrule the requirements of the condominium statute" was a result "[t]he Legislature could not have intended[.]" Id at 447. [Note 4] 





 In short, "[e]xpansion of a condominium unit into a common area requires the unanimous consent of all condominium owners, regardless of whether the master deed purports to allow such an expansion with the consent only of the condominium trustees." Calvao v. Raspallo, 92 Mass. App. Ct. 350 , 352 (2017), citing G.L. c. 183A, § 5(b)(1) and Stauss, 417 Mass. at 445. For the same reasons, to allow a single unit owner to take title to common area by adverse possession would allow that unit owner to expand their unit into the common area without the consent of all unit owners. While adverse possession is just that  adverse  the statutorily provided-for scheme to which unit owners submit when they voluntarily buy into the condominium arrangement of property rights necessarily means some forms of ownership, i.e. ownership by adverse possession over common areas, will not be allowed. 





 Neither the parties nor the court have been able to locate binding authority or persuasive authority from another jurisdiction where a court adjudicated a condominium unit owner's claim of adverse possession over that condominium's common area. Pisano and Nader cite to an unpublished 2006 Connecticut Superior Court case that did allow adverse possession over a common area, but the facts of Moore v. Savin Rock Condo, Nos. CV 044002529S, CV 064021317S, 42 Conn. L. Rptr. 502, 2006 WL 3833651 (Conn. Super. Ct. 2006), are distinguishable from the present case. In Moore, the adversely possessed property was a "Superintendent Apartment," itself a separate apartment listed as a common element in the condominium declaration, id. at *1, and not separate common area into which an existing unit sought to extend. The plaintiff in that case had acquired sole title to the unit by a warranty deed prior to the commencement of the case. Id. Here, while Pisano and Nader held a deed for their unit, the deed did not grant them exclusive access to the Disputed Area. 





 Pisano and Nader also cite to a case from the state of Washington, Timberlane Homeowners Ass'n, Inc. v. Brame, 79 Wn. App. 303 (1995) (Timberlane), for the proposition that common areas can be adversely possessed. In Timberlane, the Court of Appeals of Washington held that as a matter of law the defendants could adversely possess common area held by the homeowners association by enclosing the common area beyond their yard with a fence for the statutory period. Id. at 312. The ownership scheme in Timberlane, however, was markedly different from a condominium in Massachusetts: there, the homeowners' association "acquired fee simple title to the common properties in the subdivision," which was then subject to a "right and easement of enjoyment" held by every member of the association. Id. at 306. In Massachusetts, the rights of condominium owners are set by statute, such that each owner holds a "proportional, undivided interest" in the common areas, which cannot be modified absent consent of the other unit owners. G.L. c. 183A, § 5(b); see Strauss, 417 Mass. at 445-446; Golub, 402 Mass. at 400; Calvao, 92 Mass. App. Ct. at 352. 





 Here, there is no such unanimous agreement among unit owners regarding the Disputed Area, and the Master Deed has not been amended. While, as Pisano and Nader note, G.L. c. 183A, §§ 5(a), (b), and (c) do not explicitly bar adverse possession, allowing adverse possession in the face of these statutory provisions would render the condominium statute meaningless. Pisano and Nader cannot adversely possess the Disputed Area as they claim. Count I of the Complaint, the sole remaining count, must be dismissed.





II- Cross Motion for Summary Judgment 





 The Plaintiffs' Cross-Motion asks for entry of judgment in their favor and against the Trust on the two counts of the Counterclaim, (I) trespass by way of an overburdening of the limited easement, and (II) waste and unlawful encroachment. The Plaintiffs set forth two grounds for their cross-motion: (1) unclean hands or equitable estoppel, and (2) that the Trust has no reasonable expectation of proving essential elements of its claims. 





 The only materials before the court on the Plaintiffs' Cross-Motion are the pleadings. There were no "depositions, answers to interrogatories, ... responses to requests for admission . . . [or] affidavits" submitted in order to consider whether there are genuine issues as to material facts. Mass. R. Civ. P. 56(c). "[A] party who moves for summary judgment has the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial. That burden is not sustained by the mere filing of the summary judgment motion or by the filing of a motion together with a statement that the other party has produced no evidence that would prove a particular necessary element of this case." Kourouvacilis, 410 Mass. at 714. While the moving party need not submit supporting materials to disprove an essential element, the movant "must demonstrate that proof of that element at trial is unlikely to be forthcoming." Id., citing Celotex Corp., 477 U.S. at 328 (White, J., concurring). Pisano and Nader have not done so, but rather appear to challenge the sufficiency of the Counterclaim on its face. The proper mode of challenging the sufficiency of a complaint is by a motion to dismiss under Mass. R. Civ. P. 12, and not a motion for summary judgment under rule 56. Smith v. Massimiano, 414 Mass. 81 , 85 (1993). "Indeed, a summary judgment motion 'concedes the validity of the pleading,'" and therefore cannot be used to dismiss a complaint. Id., quoting J.W. Smith & H.B. Zobel, Rules Practice 347 (1977 & 1993 Supp.). Just as the defendants in Smith were not entitled to summary judgment "on the ground that the plaintiff had failed to produce evidence," so the Plaintiffs in this case cannot be entitled to summary judgment on the Trust's Counterclaim. Id. As further detailed below, because Pisano and Nader did not demonstrate that the Trust would be unable to prove its Counterclaim at trial, the Plaintiffs' Cross-Motion is denied. 





 A) Unclean Hands/Equitable Estoppel 





 Pisano and Nader move for summary judgment on the Counterclaim which seeks, as a remedy, enjoinment of the Plaintiffs' offensive use of the common areas, damages for harm to the rights of other unit owners, costs of replacing plantings unlawfully removed and destroyed, attorneys' fees, and removal of offending structures in common areas. Amended Answer at 8. Pisano and Nader argue that the Trust is barred from seeking such remedies because several of the Trustees also maintain rear decks built on common areas. 





 While it is true that unclean hands will bar equitable relief from a plaintiff who substantially violates the same restriction that they seek to enforce (See Tehan v. Security Nat'l Bank, 340 Mass. 176 , 182-184 (1959), and Atwood v. Walter, 47 Mass. App. Ct. 508 , 516-518 (1999)), it is not clear on the facts taken in the light most favorable to the Trust or any of the Trustees have acted with unclean hands. While the Trust, in the Amended Answer, admitted that the owners of Unit B, Unit D, and Unit G have "extended [their] use beyond the porch," the Trust further specified that such use was expanded "with permission." Amended Answer at 2. At this stage, without any affidavits submitted by Pisano and Nader in support of their motion, it cannot be determined whether or not the Trust is estopped from enforcing the Master Deed's restrictions based upon the Trustees' own use of the common areas. As a result, there remains a "genuine issue as to [a] material fact" with respect to the relief sought by the Trust in the Counterclaim. Mass. R. Civ. P. 56(c). 





 B) Expectation of Proving Essential Elements 





 As to the first count of the Counterclaim, trespass by overburdening of the limited easement, Pisano and Nader move for summary judgment, alleging that the Trust has no reasonable expectation of proving the essential element of "a material increase in  cost or inconvenience." Plaintiffs' Cross-Motion at 5, citing Texon, Inc. v. Holyoke Machine Co., 8 Mass. App. Ct. 363 , 366 (1979). In Massachusetts, "overburdening" can refer to one of three things: (1) a use that exceeds the scope of rights held under an easement; (2) the use of an easement to serve land other than the dominant estate (also known as "overloading"); or (3) overly frequent or intensive use of an easement (also referred to as "nuisance"). Southwick v. Planning Bd. of Plymouth, 65 Mass. App. Ct. 315 , 319 n.12 (2005); Stack v. D'Ambrosio, 26 LCR 391 , 394 (2018) (Misc. Case No. 17 MISC 000189) (Vhay, J.). 





 Here, it appears that the Counterclaim alleges that Pisano and Nader are overburdening in the first sense, that is, using the Disputed Area in a way that exceeds the uses permitted by the Master Deed. The Texon case is inapplicable here: that case concerned a use by the owner of the servient estate that interfered with the easement holder's exercise of their rights. Texon, Inc., 8 Mass. App. Ct. at 366. Here, it is Pisano and Nader, rather than the owner of the servient estate (all the unit owners) who are being accused of overburdening the easement. Plaintiffs' citation to Nora, LLC v. Gelch, 17 LCR 767 , 768-769 (2009) (Misc. Case No. 06 MISC 319094) (Sands, J.), is misplaced: that case addressed a trespass claim, rather than a "trespass by overburdening of an easement" claim. For an overburdening claim, all that the Trust must prove is the scope of the Plaintiffs' easement, and that their use is exceeding that scope. 





 Even if Pisano and Nader were correct that the overburdening claim required a showing of a "material increase in cost or inconvenience," id. at 769, they have still failed to present any evidence showing that "there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial." Kourouvacilis, 410 Mass. at 714. The facts alleged in both the Complaint and the Amended Answer indicate that Pisano and Nader have been using the Disputed Area for uses that are prohibited by the Master Deed. There still remain issues of fact on the overburdening count of the Counterclaim to be determined at trial, and it therefore will not be dismissed at this stage. 





 As to the second count of the Counterclaim, waste and unlawful encroachment, Pisano and Nader again argue that the Trust has no reasonable expectation of proving an essential element: "substantial injury" for waste, and "significant" encroachment. Waste is "unreasonable or improper use, abuse, mismanagement or omission of duty touching real estate by one rightfully in possession which results in its substantial injury." Delano v. Smith, 206 Mass. 365 , 370 (1910). Once again, in order to determine whether the Plaintiffs' actions have constituted "substantial waste," the court needs record evidence, none of which has been presented in this motion. Without a showing that "proof of that element at trial is unlikely to be forthcoming," the court cannot say whether "substantial waste" has been made here. Kourouvacilis, 410 Mass. at 714. 





 Moreover, Massachusetts caselaw does not require that encroachment be "significant" to be actionable. Plaintiffs' citation to Capodilupo v. Vozzella, 46 Mass. App. Ct. 224 , 226 (1999), addresses the remedy for encroachment -- "significant" encroachment merely entitles a landowner to an order of removal. The "significance" of the alleged encroachment is not an essential element of the Counterclaim. Pisano and Nader have once again made no record showing that the Trust is unlikely to prove this claim at trial. Kourouvacilis, 410 Mass. at 714. Particularly in light of the Plaintiffs' own allegations in their Complaint (namely, that they have used a deck that extends into the common area of the Condominium, and maintained landscaping and personal items on that deck) it is impossible to say at this stage that the Trust will be unsuccessful in proving that the Plaintiffs have encroached into the common areas. 





CONCLUSION 





 For the foregoing reasons, Defendants' Motion is ALLOWED, and the Plaintiffs' Cross-Motion is DENIED. Count One, the remaining count of the Complaint, is DISMISSED with prejudice. A Zoom status conference is set down for August 10, 2021 at 10:45 a.m. 





 SO ORDERED 





FOOTNOTES
[Note 1] The court can take judicial notice of certain recorded documents. See Mass. G. Evid. 201(b); Jarosz, 436 Mass. at 529-530; Fitzpatrick v. Yeaman, 16 LCR 601 , 602, n.4 (2008); Ramos v. Jones, 23 LCR 93 , n. 2 (2015). 

[Note 2] The omitted provisions of § 5(b)(1) concern changes in percentage interests as a result of the phasing of new units or the release or termination of restrictions. 

[Note 3] The omitted provisions of § 5(c) concern the granting of easements over common areas. 

[Note 4] This specific holding was superceded by amendments to G.L. c. 183A, § 5(b), to provide different standards for phased condominiums. See St. 1998, c. 242, § 5. The amendments did not, however, change §5(b)(1)'s requirement for unanimous consent where changes are made outside the context of phasing rights. See Calvao v. Raspallo, 92 Mass. App. Ct. 350 , 352-353 (2017). Indeed, the Legislature's decision not to change the strict unanimous consent requirement outside of phasing rights is further proof that the SJC's strict interpretation of the statute was in line with the Legislature's intent. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.